IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

SCL BASILISK AG and THORCO )
SHIPPING A/S, )
 )
 Plaintiffs, )
 )
v. ) CASE NO. CV416-162
 )
AGRIBUSINESS UNITED SAVANNAH )
LOGISTICS LLC, AGRIBUSINESS )
UNITED INC, AGRIBUSINESS )
UNITED DMCC INC, AGRIBUSINESS )
UNITED DMCC (DUBAI) LLC, and )
SONADA AGRO LIMITED (UK) LLC, )
 )
 Defendants. )
 )

## ORDER

Before the Court is Plaintiffs' Petition and Application for an Order for Security in Aid of Foreign Arbitration Pursuant to O.C.G.A. § 9-9-30. (Doc. 1.) For the following reasons, Plaintiffs' petition is **DENIED**. There being no other pending issues, the Clerk of Court is **DIRECTED** to **close this case**.

### BACKGROUND

The petition in this case is the result of a charter party[1] agreement that did not go as planned. Plaintiffs are the owner and management company of the SCL Basilisk. On December 30,

---
[1] A charter party "is a specialized type of maritime contract for the hire of a vessel. The person who obtains the use and service of the ship is called the charterer, and the person hiring out the vessel is usually the shipowner." See State Establishment for Agri. Prod. Trading v. M/V Wesermunde, 838 F.2d 1576, 1578 (11th Cir. 1988) (reversed on other grounds).

2015, Plaintiff SCL Basilisk AG ("Basilisk") and Defendant Agribusiness United Savannah Logistics LLC ("Agribusiness Savannah") executed a voyage charter party for the carriage of grain from New Orleans to Portugal and Morocco. (Doc. 1 ¶ 14.) On January 15, 2016, Defendant Agribusiness Savannah requested that the charter party be changed to Defendant Sonada Agro Limited (UK) LLC ("Sonada"). (Id. ¶ 17.) Defendant Agribusiness Savannah requested the change for insurance coverage reasons. (Id.) Plaintiff Basilisk agreed to the change and on March 4, 2016, a letter of indemnity was issued by Defendant Sonada as charterer and Defendant Agribusiness Savannah as guarantor. (Id. ¶ 18.) The letter required the posting of security if the SCL Basilisk was arrested or detained and agreed for indemnification against "any liability, loss, damage or expense of whatsoever nature" that Plaintiff Basilisk could sustain. (Id. ¶¶ 19-20.) Plaintiff later discovered that Defendant Sonada had been incorporated two days before Defendant Agribusiness Savannah requested the change in charter party. (Id. ¶ 28.)

Unfortunately for all parties involved, the cargo onboard the SCL Basilisk was attached on January 20, 2016, pursuant to a Writ of Attachment issued by the United States District Court for the Eastern District of Louisiana. (Id. ¶ 21.) Defendants Sonada and Agribusiness Savannah were unable to post security to release the SCL Basilisk until February 24, 2016. (Id. ¶ 22.) As

2

a result, Plaintiff Basilisk alleges that it incurred damages in the amount of $452,528.86.[2] (Id. ¶ 23.)

According to the Plaintiffs, Agribusiness DMCC and Agribusiness Inc. are suppliers of agricultural commodities. (Id. ¶ 25.) Plaintiffs allege that all Defendants, including the two which were parties to the charter party agreement, "share common addresses or offices, and have overlapping directors, officers, managers, agents and employees." (Id. ¶ 26.) Plaintiffs also allege that the companies were set up by Abderrahim Abouelouafa—the owner—to avoid paying on debts owed (id. ¶ 27) and that the companies comingle funds and transfer assets without meaningful arms-length consideration (id. ¶ 9). Many of the Defendants are registered in Georgia, Louisiana and New York. (Id. ¶ 33.)

On February 11, 2016, Plaintiff Basilisk commenced proceedings against Defendants Sonada and Agribusiness Savannah in a London arbitration as required by the charter party agreement. (Id. ¶ 24.) Plaintiffs filed this petition on June 24, 2016, requesting that the Court enter an order requiring

---

[2] Plaintiffs also indicate that their total damages are $667,528.86. This includes $200,000 for "interest (calculated at the arbitration rate of 3.5% compounded quarterly)" and "recoverable costs, legal fees and expenses to be awarded in the London Arbitration as permitted under English Law." (Doc. 1 ¶ 43.) Because the Court is denying Plaintiffs' petition, there is no need to determine whether Plaintiffs should recover these fees.

3

Defendants to post security pending the outcome of the London arbitration. (Id. at 12.) Rather than relying on maritime law to seek this recovery, Plaintiffs have alleged that the Court may order security issued pursuant to Ga. Code. Ann. § 9-9-30.

Because of the expedited nature of this suit and the possibility that recovery in the arbitration could be hampered if security is not posted, the Court scheduled a hearing in this matter for Monday, July 11, 2016, at 5:00 p.m. in Savannah, Georgia. The parties were directed to be prepared to present evidence concerning Plaintiffs' entitlement to relief pursuant to Ga. Code. Ann. § 9-9-30 and any affirmative defenses Defendants might have. Plaintiffs argued that they were entitled to recover against all Defendants, not just Defendants Agribusiness Savannah and Sonada, because the entities are "so entwined and fused that they collectively form a single unit." (Doc. 1 ¶ 39.) Defendants however, argued that the Court cannot require the posting of security pursuant to Ga. Code. Ann. § 9-9-30 because Plaintiffs are not entitled to the relief they seek under Georgia law.

**ANALYSIS**

I. RECOVERY PURSUANT TO MARITIME LAW

Maritime law[3] provides remedies for injured parties seeking security or attachment pursuant to a maritime transaction. The Supplemental Rules for Certain Admiralty and Maritime Claims (herein after "Rules") allow entities to sue in personam and attach property as security for the claim pursuant to Rule B. Rule B requires that a party file a verified complaint requesting attachment. Rule B(1)(a). It also requires that the plaintiff or the plaintiff's attorney sign and file an affidavit stating that the defendant cannot be found within the district. Rule B(1)(b). Parties may also sue a ship directly in rem pursuant to Rule C.

Neither of these options is available to Plaintiffs. Plaintiffs are the owners of the SCL Basilisk and are unable to pursue attachment under Rule C as such attachment would result in a suit against themselves. Plaintiffs also may not seek attachment pursuant to Rule B as, according to their filings, all Defendants are present in some fashion in this district.

---

[3] Charter party agreements are subject to maritime law as "[a] charter party is a maritime contract and that as between the parties to it the Federal District Courts sitting in admiralty have jurisdiction to determine obligations arising from it." J.B. Effenson Co. v. Three Bays Corp., 238 F.2d 611, 615 (5th Cir. 1956). In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Accordingly, Plaintiffs must show that they may seek relief pursuant to some other avenue.

II.  RECOVERY PURSUANT TO GA. CODE. ANN. § 9-9-30

Because traditional maritime provisions are unavailable, Plaintiffs have arrived at a novel solution. They argue that Ga. Code. Ann. § 9-9-30—Interim Measures of Protection by Court—allows the Court to impose security that is not otherwise available pursuant to maritime law. Plaintiffs argue that the Court may use this provision to order the relief they seek. Ga. Code. Ann. § 9-9-30 is a provision in the Georgia International Commercial Arbitration Code. It states in its entirety that "[b]efore or during arbitral proceedings, a party may request from a court an interim measure of protection, and a court may grant such measure, and such request shall not be deemed to be incompatible with an arbitration agreement." Generally, the provisions of the code apply only if the arbitration occurs within the state of Georgia. Ga. Code. Ann. § 9-9-21. However, § 9-9-30 is one of six provisions that is applicable when an arbitration occurs outside the State of Georgia. Ga. Code. Ann. § 9-9-30 was enacted in July of 2012 and there is little guidance as to the purpose of the statute or what is meant by the term "interim measure". Accordingly, this is a matter of first impression.

Because this is a maritime case, the Court must determine whether it can apply Georgia law to supplement maritime law. Generally, courts are entitled to supplement maritime law with state law so long as "the application of state law does not frustrate national interests in having uniformity in admiralty law." Coastal Fuels Mktg., Inc. v. Fla. Exp. Shipping Co., 207 F.3d 1247, 1251 (11th Cir. 2000). "State law may be applied to issues of a maritime nature if: (1) there is not an act of Congress that speaks to the issue; (2) the state law does not contravene a characteristic feature of the general maritime law; and (3) the state law does not interfere with the proper harmony and uniformity of maritime law." Misener Marine Const., Inc. v. Norfolk Dredging Co., 594 F.3d 832, 839 (11th Cir. 2010) citing S. Pac. Co. v. Jensen, 244 U.S. 205, 216 (1917). Here, the Court believes that the Georgia law cited by Plaintiffs runs afoul of all three requirements.

As an initial matter, the Federal Arbitration Act ("FAA") in 9 U.S.C. § 8 addresses the intersection of maritime law, arbitration, and parties seeking security. It states

> [i]f the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall

retain jurisdiction to enter its decree upon the award.

9 U.S.C. § 8. This provision is applicable even after a case has proceeded to arbitration. See e.g., Paramount Carriers Corp. v. Cook Indus., Inc., 465 F. Supp. 599, 602 (S.D.N.Y. 1979).

Ga. Code. Ann. 9-9-30 would bypass the requirements of the FAA. The FAA requires that entities may seek security by proceeding "according to usual course of admiralty proceedings." 9 U.S.C. § 8. The usual course of admiralty proceedings where parties are seeking security requires libel or seizure pursuant to Rule B or Rule C. Both of these remedies are unavailable to Plaintiffs. Because there is an act of Congress that speaks to the issue, and because the application of § 9-9-30 would contravene the application of this act, the Court cannot grant the relief Plaintiffs seek.[4]

Even if 9 U.S.C. § 8 were inapplicable, the Court is concerned that Ga. Code. Ann. § 9-9-30 contravenes a characteristic feature of general maritime law and interferes with its harmony and uniformity. Misener, 594 F.3d at 839, citing Jensen, 244 U.S. at 216. "Maritime attachment is by any test a characteristic feature of the general maritime law." ContiChem LPG v. Parsons Shipping Co., 229 F.3d 426, 433 (2d

---

[4] As a general matter outside of maritime law, state laws may not conflict with the Federal Arbitration Act. See Southland Corp. v. Keating, 465 U.S. 1 (1984); Perry v. Thomas, 482 U.S. 483 (1987).

8

Cir. 2000) (quoting Aurora Mar. Co. v. Abdullah Mohamed Fahem & Co., 85 F.3d 44, 47 (2d Cir. 1996). Plaintiffs have stated that they are seeking to require Defendants to post security pursuant to § 9-9-30 because Plaintiffs are unable to meet the requirements of attachment pursuant to Rule B or Rule C. However, allowing such recovery pursuant to a Georgia Code provision could result in entities becoming subject to varying security and attachment requirements on a state-by-state basis. Moreover, it would allow entities to bypass the procedural requirements of Rule B and Rule C. This circumvention of maritime law is something that is unacceptable. See e.g., IMTT-Gretna v. Robert E. Lee SS, 993 F.2d 1193, 1195 (5th Cir. 1993) ("To allow state law to supply a remedy when one is denied in admiralty would serve only to circumvent the maritime law's jurisdiction."); White v. Mercury Marine, Div. of Brunswick, Inc., 129 F.3d 1428, 1431 (11th Cir. 1997) (noting that application of Florida's continuing tort theory would be inconsistent with maritime law because "[t]he very existence of a federal general maritime statute of limitations implies that it should be applied uniformly across the nation"); see also Fernandez v. Aliff, 2008 WL 2026010, *5 (D.P.R. May 8, 2008) (unreported) (prohibiting the recovery of damages for emotional injuries pursuant to state legislation where it would "circumvent maritime law").

9

Even if the Court did determine that Ga. Code. Ann. § 9-9-30 allowed recovery, the Court cannot discern what relief would be applicable. Plaintiffs argued at the hearing that the term "interim relief" should be broadly defined. They argued that under § 9-9-30, the Court has unfettered rights to order the security requested. However, Defendants argued that the Court may only grant remedies pursuant to Georgia and maritime law and must abide by the procedural requirements of those remedies. The Court agrees with Defendants that § 9-9-30 does not allow the Court to issue whatever "interim remedy" it thinks may be necessary. Instead, the more appropriate interpretation of § 9-9-30 is that it allows courts to grant remedies otherwise available under Federal and Georgia law.

Plaintiffs have acknowledged that they are not entitled to relief pursuant to Rule B and Rule C of the Supplemental Rules of Maritime Procedure. They have provided no other avenue of relief pursuant federal maritime law. As a result, the Court turns to Georgia law to determine what relief may be applicable. The Georgia Code allows attachment pursuant to Chapter 3 of Title 18. However, this attachment is allowed only if the entities seeking attachment place a bond "in a sum equal to twice the amount claimed due in the plaintiff's application." Ga. Code. Ann. § 18-3-10. In this case, no such bond has been

presented. Accordingly, Plaintiffs are not entitled to attachment pursuant to Ga. Code. Ann. § 9-9-30.

**CONCLUSION**

Before the Court is Plaintiffs' Petition and Application for an Order for Security in Aid of Foreign Arbitration Pursuant to O.C.G.A. § 9-9-30. (Doc. 1.) For the foregoing reasons, Plaintiffs' petition is **DENIED**. There being no further pending issues in this case, the Clerk of Court is **DIRECTED** to **close this case.**

SO ORDERED this 18th day of July 2016.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA